# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

2013 DEC 23 AM 9: 24
COURT OF APPEALS DIV 1
STATE OF WASHINGTON
FILED

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | NO. 68814-6-I |
| | ) | |
| Respondent, | ) | DIVISION ONE |
| | ) | |
| v. | ) | |
| | ) | UNPUBLISHED OPINION |
| RONALD LEE GRAY III, | ) | |
| | ) | |
| Appellant. | ) | FILED: December 23, 2013 |
| | ) | |

LEACH, C.J. — Ronald Gray III appeals his conviction for attempted murder in the first degree while armed with a deadly weapon. He claims that the trial court violated his constitutional right to present a defense when it excluded evidence of the complaining witness's criminal history. Gray also alleges a Brady[1] violation, fabrication of evidence, prosecutorial misconduct, erroneous exclusion of evidence, newly discovered evidence, ineffective assistance of counsel, and an unfair trial. Because the court properly excluded Gray's proffered witness's criminal history as propensity evidence barred by ER 404(b) and we find no merit in Gray's remaining arguments, we affirm the conviction.

---

[1] Brady v. Maryland, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963).

FACTS

On August 7, 2011, around 10:30 p.m., Gray and two friends tried to pick fights with others outside of a convenience store. After leaving the store, they walked down the street and attempted to start a fight with three teenagers. One of the teenagers, Jordan Kirk, went into his house and told his father, Matthew Kirk, about the harassment. Matthew Kirk told Gray and his friends to stay away and threatened to shoot them if they stepped into his yard. Gray and his friends yelled and grabbed their waists as if they had guns. Jordan called the police, and Gray and his friends left and continued to walk down the street. Gray, who was wearing blue shorts and a white T-shirt, continued yelling as he walked down the street. Numerous residents in the area called 911.

The group approached Leroy Travers and Coral Williams, who were unloading their car after returning from a rafting trip, and yelled, "I am a Crip" and "fuck you, nigger." Travers told them to leave. They called Williams names and made comments about shooting Travers and Williams. Travers told them that he did not believe they had a gun. He approached Gray, who punched him in the face. Travers punched Gray, threw Gray to the ground, and kicked him with his bare foot. Before turning to walk away, Travers also shoved one of Gray's friends and told him to stay back.

After Gray got up, he reached into his pants and threatened Travers, saying, "That's okay, I know where you live" and telling Travers that he would "kill your whore." Travers, who had no weapons, ran back toward Gray. The men engaged, and Gray stabbed Travers four times.

The State charged Gray by amended information with attempted murder in the first degree and assault in the first degree while armed with a deadly weapon. Gray requested a pretrial ruling on the admissibility of Travers's criminal history to support his self-defense claim. The court excluded this evidence under ER 404(b).

A jury convicted Gray as charged and also returned a special verdict that he was armed with a deadly weapon. The court imposed a standard range sentence.[2] Gray appeals.[3]

## ANALYSIS

### Witness's Criminal History Evidence

Gray first claims, "[T]he essential question here is whether a traditional ER 404(b) applies when evidence is offered by a defendant in support of his defense, or whether a straightforward relevancy/prejudice inquiry applies." He

---

[2] The jury convicted Gray of attempted murder in the first degree and assault in the first degree while armed with a deadly weapon. The court vacated the assault conviction on the basis that conviction for both counts would violate double jeopardy principles.

[3] We include other relevant facts in the discussion below as necessary.

alleges that the trial court "denied his constitutional right to present a defense" when it excluded evidence of Travers's criminal history under ER 404(b). He contends, "Travers' prior aggressive contacts tended to make it more probable that he, not Gray, was the aggressor and that he was someone to be feared." Gray argues that this propensity evidence would support his assertion that he acted in self-defense when he stabbed Travers.

The parties dispute the standard for our review of the court's application of ER 404(b). Gray contends that we should conduct a de novo review because the trial court's ruling denied his constitutional right to present a defense. The State counters that we should review for an abuse of discretion because the proper application of the rules of evidence involves the trial court's exercise of discretion. We need not resolve this question because the court properly excluded the evidence under either standard of review.

We recently considered and rejected Gray's constitutional and ER 404(b) interpretation claims in State v. Donald.[4] We held that ER 404(b) requires exclusion of evidence of any person's other crimes, wrongs, or acts to show that he acted consistent with his character on a particular occasion.[5] We also held

---

[4] No. 68429-9-I (Wash. Ct. App. Dec. 9, 2013).
[5] Donald, slip op. at 7.

that this requirement does not violate an accused's constitutional right to present a defense.[6]

ER 404(a)(2) allows the admission of evidence of "a pertinent trait of character of the victim offered by an accused." Gray makes no argument that the trial court should have admitted Travers's criminal history under this rule. The criminal history proffered to the trial court would not support such an argument. The trial court did not err when it excluded the proffered evidence of Travers's criminal history.

Brady Violation

In a statement of additional grounds, Gray alleges that the prosecutor improperly withheld evidence. Gray asserts that he requested video surveillance from the convenience store and that "[i]n the E-mail to Mr. Gray[']s trial counsel the prosecutor stated 'there[']s no outside video of the mart' indicating he rendered the surviellance [sic] material worthless." Gray claims, "[I]t was mentioned in the police report that a copy was to be at the police headquarters putting it in the prosecutor[']s constructive possession." Gray argues, "The video if produced would have shown Mr. Gray was not acting aggressive toward anyone at the mart, rebutting the prosecutor[']s giving of the first aggressor instruction."

---

[6] Donald, slip op. at 1.

In Brady v. Maryland, the Supreme Court held that "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."[7] Evidence is material only if there is a reasonable probability that had prosecution disclosed the evidence to the defense, the proceeding would have had a different result.[8] The record does not contain the referenced police report or e-mail or any evidence of a surveillance video from the convenience store. Additionally, nothing in the record indicates that Gray interacted with Travers at or near the store. Because Gray fails to show a reasonable probability that disclosing this evidence, if it exists, would have led to a different result, he fails to show a violation of the Brady rule.

Fabrication of Evidence

Gray further alleges, "The prosecutor also fabricated evidence by stating the defendant had the folding knife at the ready as he taunted 'the victim' in an attempt to get him to re-engage." "In the criminal law context, the deprivation of

---

[7]Brady, 373 U.S. at 87.

[8] State v. Thomas, 150 Wn.2d 821, 850, 83 P.3d 970 (2004) (quoting United States v. Bagley, 473 U.S. 667, 682, 105 S. Ct. 3375, 87 L. Ed. 2d 481 (1985); In re Pers. Restraint of Benn, 134 Wn.2d 868, 916, 952 P.2d 116 (1998)).

liberty based on fabricated evidence is a violation of a person's constitutional right to due process."[9]

To support his assertions, Gray cites testimony from witnesses Coral Williams and Ryan Leverenz, who said that they observed no weapons. Gray does not dispute that he was involved in an altercation with Travers or that Travers was stabbed. Witness Leo Mattox testified that Gray screamed to Travers that he was going to "kill his whore." Although Gray claims that he had no weapon, Mattox testified, "I seen a knife come out and what appeared to be punching or stabbing, at that point, I couldn't clearly define it that night, you know, until later." Mattox also told the court that he saw Gray throw something that hit a neighbor's shed as Gray ran away from the scene[10] and that Mattox found a knife near the shed the next day. A forensic scientist from the Washington State Patrol Crime Laboratory testified that although she could not clearly determine a single person's DNA (deoxyribonucleic acid) profile on the knife handle, the knife's blade contained Travers's blood. Because evidence elicited at trial supports the prosecutor's argument, we reject Gray's fabrication claim.

---

[9] Jones v. State, 170 Wn.2d 338, 350, 242 P.3d 825 (2010).
[10] The court admitted the knife into evidence.

Prosecutorial Misconduct

Gray also alleges prosecutorial misconduct. He claims that the prosecutor improperly expressed his personal opinions to the jury. Additionally, Gray contends that during the State's closing argument, the prosecutor violated the pretrial order precluding the use of the word "victim."

To succeed on a claim of prosecutorial misconduct made for the first time on appeal, an appellant must establish that the prosecutor's behavior was "so flagrant and ill intentioned that an instruction could not have cured the resulting prejudice."[11] To prove prosecutorial misconduct, an appellant must show both improper conduct and resulting prejudice.[12] Conduct is not flagrant and ill-intentioned where a curative instruction could have cured any error.[13] "But the cumulative effect of repetitive prejudicial prosecutorial misconduct may be so flagrant that no instruction or series of instructions can erase their combined prejudicial effect."[14] "Mere appeals to a jury's passion and prejudice are inappropriate."[15] Prejudice exists where there is a substantial likelihood that the misconduct affected the verdict.[16] The prosecutor has wide latitude in closing

---

[11] State v. Emery, 174 Wn.2d 741, 760-61, 278 P.3d 653 (2012).
[12] State v. Fisher, 165 Wn.2d 727, 747, 202 P.3d 937 (2009).
[13] State v. Walker, 164 Wn. App. 724, 737, 265 P.3d 191 (2011), review denied, 177 Wn.2d 1026 (2013).
[14] Walker, 164 Wn. App. at 737.
[15] State v. Smith, 144 Wn.2d 665, 679, 30 P.3d 1245, 39 P.3d 294 (2001).
[16] State v. McKenzie, 157 Wn.2d 44, 52, 134 P.3d 221 (2006).

argument to draw reasonable inferences from the evidence and to express such inferences to the jury.[17] We review a prosecutor's comments during closing argument in the context of the total argument, the issues in the case, the evidence, and the jury instructions.[18]

During the State's closing argument, the prosecutor commented, "He turns him and pushes against him onto the ground, and luckily that's when the officer arrived, because I am pretty sure Leroy Travers would not be here today if that officer had not arrived." He also remarked, while referring to Gray, "[P]robably embarrassed him in front of his friends that he got knocked down, and he's going to finish the job. So first aggressor. That alone eliminates self—self-defense." Even if the prosecutor's statements were improper, Gray fails to show a substantial likelihood that they affected the verdict. Viewed in the context of the total argument, the prosecutor recited the law directly from the jury instructions and noted that the State bears the burden of proof. The State also presented a strong case. Mattox testified that Gray attempted to pick fights and was yelling as he walked down the street. He also testified that Travers ran at Gray after Gray threatened Travers and Williams, the two men "grabbed each other equally," and then Gray stabbed Travers. Ryan Leverenz, another witness,

---

[17] State v. Magers, 164 Wn.2d 174, 192, 189 P.3d 126 (2008) (citing State v. Stenson, 132 Wn.2d 668, 727, 940 P.2d 1239 (1997)).
[18] Emery, 174 Wn.2d at 764 n.14.

testified that he heard Gray yelling threats to "shoot a house up" and threats to Travers's girl friend before the men engaged and Gray stabbed Travers. Travers testified that Gray threatened to shoot him and his girl friend and that Gray punched Travers. Travers also testified that after he punched Gray, threw him on the ground, and kicked him, Gray got up and continued to threaten Travers, Travers ran at Gray, and then Gray stabbed Travers. The contrary evidence primarily concerned the witnesses' credibility. Because Gray fails to demonstrate prejudice, we reject his argument.

Gray also fails to show that he was prejudiced from the prosecutor's use of the word "victim" approximately seven times during closing, despite the court's pretrial order granting Gray's motion in limine to preclude the State from referring to Travers as "the victim."[19] Even if this conduct was improper, Gray does not show a substantial likelihood that these comments affected the verdict.

Exclusion of Evidence

Gray also claims that the court erred when it excluded an out-of-court statement that Travers purportedly made to Mattox. The stabbing occurred on August 7. On October 3, Travers allegedly told Mattox, while referring to Gray, "Yeah, I probably would have done the same thing if I'd been in his circumstances."

---

[19] The record does not contain this motion in limine.

Gray contends that Travers's statement was not hearsay.[20] In ruling that

Mattox could not testify to Travers's statement, the court reasoned,

> This conversation which took place about 30 days after, and within which the individuals are sharing opinions about what could have and should have happened and—and after they've reflected on this and so forth and so on is not relevant to this case, in my opinion. And to the degree that it is, Evidence Rule 403 would keep it out because of the danger of confusion of the issues and so forth, and misleading the jury.
>
> The jury's job is to determine what happened there on the scene. The jury's job is not to determine what post—in a post-reflective state the parties thought was going to go—what the parties thought should have happened. And it is, I think, absolutely inappropriate for the record to reflect this information inasmuch as the jury's job is to determine whether or not the situation was one which required—which called for the action that brings Mr. Gray to the scene right now—brings him to the attention of the Court.
>
> So what two fellows, two friends are talking about later, 30 days later about this is not considered appropriate under 403 or under 401.[21]

We agree with the trial court. Even if we were to conclude that evidence of this

statement is not hearsay, Gray fails to show how this statement is relevant or that

the danger of misleading the jury when asked to consider Gray's and Travers's

conduct at the time of the incident would not substantially outweigh its probative

---

[20] "'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." ER 801. Gray alleges that the prosecutor committed misconduct by objecting to this evidence. The State's objection cannot form the basis of a prosecutorial misconduct claim. Although the State objected to the statement's admission on the basis that it was hearsay and irrelevant, the court addressed only the relevancy objection.

[21] The court appears to have erred in stating "30 days." The transcript indicates that the conversation took place almost two months after the stabbing.

NO. 68814-6-I / 12

value. Thus, the trial court did not abuse its discretion in excluding evidence of this conversation.

Newly Discovered Evidence

Gray also alleges that he "had a friend with him by the name of Tony Goodnow, who was a witness to Mr. Gray[']s self defense act. He was interviewed after the trial by Mr. Gray[']s sentencing counsel Lisa Mulligan." Gray argues, "His statement would shed new light on the first aggressor issue, so it could change the result of the verdict." Because reviewing this claim on direct appeal would require us to consider matters outside the trial record, we decline to address it.[22]

Ineffective Assistance of Counsel

Gray also claims that his trial counsel, Kris Jensen, was ineffective because he "failed to conduct a pre-trial interview" with witness Matthew Kirk and because he did not call James Star to testify. Gray asserts, "Matt is the only witness who says Mr. Gray was aggressive prior to the incident, though he says there was [sic] two people wearing white t-shirts, one was aggressive, I was the only one in a white[]t-shirt."

---

[22] See State v. McFarland, 127 Wn.2d 322, 335, 899 P.2d 1251 (1995) ("Where . . . the claim is brought on direct appeal, the reviewing court will not consider matters outside the trial record." (citing State v. Crane, 116 Wn.2d 315, 335, 804 P.2d 10 (1991); State v. Blight, 89 Wn.2d 38, 45-46, 569 P.2d 1129 (1977))).

-12-

We review ineffective assistance of counsel claims de novo.[23] To prevail, a defendant must show both deficient performance and resulting prejudice.[24] Counsel's performance is deficient if it fell below an objective standard of reasonableness.[25] Our scrutiny of defense counsel's performance is highly deferential, and we employ a strong presumption of reasonableness.[26] "To rebut this presumption, the defendant bears the burden of establishing the absence of any 'conceivable legitimate tactic explaining counsel's performance.'"[27] To establish prejudice, a defendant must show a reasonable probability that the trial's outcome would have been different absent counsel's deficient performance.[28] Failure on either prong of the test defeats an ineffective assistance of counsel claim.[29] "'The decision whether to call a witness is ordinarily a matter of legitimate trial tactics and will not support a claim of ineffective assistance of counsel.'"[30]

---

[23] In re Pers. Restraint of Brett, 142 Wn.2d 868, 873, 16 P.3d 601 (2001).
[24] Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).
[25] Stenson, 132 Wn.2d at 705.
[26] Strickland, 466 U.S. at 689; McFarland, 127 Wn.2d at 335-36.
[27] State v. Grier, 171 Wn.2d 17, 42, 246 P.3d 1260 (2011) (quoting State v. Reichenbach, 153 Wn.2d 126, 130, 101 P.3d 80 (2004)).
[28] State v. Thomas, 109 Wn.2d 222, 226, 743 P.2d 816 (1987) (quoting Strickland, 466 U.S. at 694).
[29] Strickland, 466 U.S. at 697.
[30] State v. Statler, 160 Wn. App. 622, 636, 248 P.3d 165 (quoting State v. Kolesnik, 146 Wn. App. 790, 812, 192 P.3d 937 (2008)), review denied, 172 Wn.2d 1002 (2011).

The record shows that although Jensen did not conduct a pretrial interview with Kirk, Jensen effectively cross-examined Kirk at trial. Gray does not show that Jensen's failure to interview Kirk before trial prejudiced him. Jensen's choice not to call Star as a witness was a legitimate trial strategy.

Gray also claims that he received ineffective assistance of counsel because his attorney "failed to request an additional jury instruction explaining that withdrawing from the altercation revives the right to self-defense." Counsel's failure to propose a legally adequate jury instruction can constitute ineffective assistance.[31] Sufficient jury instructions permit each party to argue its theory of the case and properly inform the jury of the applicable law.[32]

An initial aggressor who provoked the altercation cannot successfully invoke the right to self-defense to justify or excuse causing bodily harm to the other person engaged in the conflict "unless he in good faith had first withdrawn from the combat at such a time and in such a manner as to have clearly apprised his adversary that he in good faith was desisting, or intended to desist, from further aggressive action."[33] Here, Gray argues that he withdrew "when he abandoned the fist-fight [sic] and physically retreated 120 feet away from

---

[31] State v. Cienfuegos, 144 Wn.2d 222, 228-29, 25 P.3d 1011 (2001).
[32] State v. Riley, 137 Wn.2d 904, 909, 976 P.2d 624 (1999) (quoting State v. Bowerman, 115 Wn.2d 794, 809, 802 P.2d 116 (1990)).
[33] State v. Craig, 82 Wn.2d 777, 783-84, 514 P.2d 151 (1973) (citing State v. Wilson, 26 Wn.2d 468, 174 P.2d 553 (1946)).

Travers." The trial court gave Gray's requested self-defense jury instruction, as well as the State's requested first aggressor instruction.

Witnesses testified that Gray and Travers separated physically after the fistfight. But Williams testified that as Gray walked away, he reached into his pants, "acting like he had something," and made verbal threats to Williams and Travers. Mattox testified that Gray "made a motion that he was pulling a gun out from behind his back" as the men were separating, that "as they were separating, the volumes were getting louder," that Gray made "a statement about killing [Travers's] whore," and that Gray was "being more aggressive as [Travers] was being coached away from the situation." Although Gray's theory of the case was self-defense, Gray's actions did not communicate clearly to Travers his intention to withdraw from further conflict. Thus, under the circumstances here, defense counsel's performance did not fall below an objective standard of reasonableness and did not prejudice Gray's trial.

Fair Trial

Gray also claims,

> While the jury was present, the honorable judge called Mr. Gray up for a sidebar, as Mr. Gray rose up the correctional officer stood up and yelled "what are you doing, sit down."
> This led the jury to see that Mr. Gray was in custody which is a violation of his rights, and serves also as a basis for [a] new trial.

"Every criminal defendant is entitled to a fair trial by an impartial jury."[34] The presumption of innocence is a basic component of a fair trial.[35] To give effect to this presumption, the court has a duty to be "alert to any factor that could 'undermine the fairness of the fact-finding process.'"[36]

The record contains no indication that the jury was aware of Gray's custodial status at the time of trial.[37] Although the record does not contain the statement that Gray cites, this incident would demonstrate merely that the court officer was maintaining order in the courtroom. Therefore, we reject this claim.

## CONCLUSION

ER 404(b) requires excluding evidence of any person's other crimes, wrongs, or acts to show that he acted consistent with his character on a particular occasion. Gray fails to show that the State withheld material evidence or fabricated evidence. He also fails to establish that the prosecutor's statements

---

[34] State v. Gonzalez, 129 Wn. App. 895, 900, 120 P.3d 645 (2005) (citing U.S. CONST. amends. VI, XIV § 1; WASH. CONST. art. I, §§ 3, 21, 22).

[35] Gonzalez, 129 Wn. App. at 900 (citing Estelle v. Williams, 425 U.S. 501, 503, 96 S. Ct. 1691, 48 L. Ed. 2d 126 (1976); State v. Crediford, 130 Wn.2d 747, 759, 927 P.2d 1129 (1996)).

[36] Gonzalez, 129 Wn. App. at 900 (quoting Williams, 425 U.S. at 503).

[37] The trial transcript indicates that Gray was concerned that the jurors saw him wearing a jail bracelet. The prosecutor stated, "The Defendant, as your Honor well knows, was wearing a fairly longsleeved jacket with a regular suit. And that bracelet would probably not even be visible from clear across the courtroom to the jurors. And even if they did see that bracelet, it would look something like a small medical bracelet." Defense counsel did not question the jurors about their ability to see the bracelet.

during closing were prejudicial. The court properly excluded Travers's out-of-court statement. We do not consider if Tony Goodnow's testimony is newly discovered evidence. Gray fails to show that defense counsel's conduct was improper or prejudicial, and no evidence shows that the jury was aware of Gray's custodial status at the time of trial. For these reasons, we affirm Gray's conviction.

WE CONCUR: