[No. 23180-1-III.   Division Three.   October 4, 2005.]

THE STATE OF WASHINGTON, *Respondent*, v. MARTIN TELLO GONZALEZ, *Appellant*.

*William D. Edelblute*, for appellant.

*Ronald S. Zirkle, Prosecuting Attorney*, and *Kenneth L. Ramm, Jr., Deputy*, for respondent.

¶1 SWEENEY, A.C.J. — A criminal defendant has the right to appear in court without restraints and without manifestations that he is being held in jail (such as being forced to wear prison clothing). An indigent criminal defendant also has the same right to the unqualified presumption of innocence as one who can afford to post bail. Here, the court told the jury at the outset of this trial that Martin Gonzalez could not post bail, was therefore being held in jail, was being transported to and from court in handcuffs, and that uniformed officers were guarding him in the courtroom. The question presented is whether this violated Mr. Gonzalez's

right to the presumption of innocence. We conclude that it did and reverse his conviction and remand for a new trial.

## FACTS

¶2 The State charged Martin Gonzalez with attempting to elude a pursuing police vehicle, driving while under the influence of intoxicating liquor and/or drugs, first degree driving while license revoked, and hit and run with property damage. The hit and run charge was dismissed.

¶3 The judge gave the following instruction to the jury, during the voir dire process:

> The next thing I want to do, ladies and gentlemen, is read some instructions to you. The first deals with the defendant himself. In criminal cases, it is common practice for the court to set bail for a person charged with a crime or crimes. A person who posts bail is released. A defendant who cannot afford to post bail remains in custody until the case is concluded. All persons held in custody are transported to and from court proceedings by an employee of the Department of Corrections. And that's the gentleman in the back of the courtroom.
>
> Standard operating procedure of the department requires that a person held in custody must be handcuffed during transport to all proceedings that are conducted outside the Department of Corrections building, which is across the street. In this case, Mr. Gonzalez has been unable to post bail and is being held in custody. Thus, pursuant to the policy I have explained, he will be handcuffed during transport to the courtroom but is not handcuffed at this point, obviously.
>
> The fact that the defendant is in custody has no bearing whatsoever on any determination a jury may reach regarding his innocence or guilt. You cannot, I emphasize, cannot draw any conclusions or in any way be affected by or concerned with the fact that he is transported to court in handcuffs. The manner in which he is escorted to court has nothing to do with him personally but is a policy for which there is no exception.

Report of Proceedings (RP) at 72-73. Neither counsel requested the instruction. And at the first opportunity outside the presence of the jury, Mr. Gonzalez moved for mistrial:

Thank you, Your Honor. At this time defense would ask the court to grant a motion for a mistrial based on the court's instructions to the jury panel. When the court read the instruction regarding whether or not Mr. Gonzalez, or a defendant, might be seen in handcuffs going to and from jail, the court mentioned that Mr. Gonzalez had not been able to bail out, and I think that circumvents the entire purpose of having Mr. Gonzalez wearing street clothes rather than a jail uniform, rather than having him sit here handcuffed. It's extremely difficult and extremely prejudicial to Mr. Gonzalez to end up having the jury know that he is in jail.

Quite frankly, there is a stigma to those who are in jail, to those who can't afford to bail out. You know, besides that, when—it calls into question my status as his attorney when the court tells the prospective jury that Mr. Gonzalez lacked the money to bail out. It seems to me that it goes to reason that, well, he probably lacked the money for an attorney, and he probably has a public defender, which, whether or not the jury pool looks down on me is not the question, but whether or not they see Mr. Gonzalez in somewhat worse light than if he were walking in here free as a bird, showing up as somebody who is on bail would do. I think it does affect their opinion. I think it does put him somewhat worse off than he would have been, and for those reasons, Your Honor, I'd ask the court declare a mistrial.

RP at 89-90.

¶4 The judge denied the motion. The jury convicted Mr. Gonzalez as charged.

## DISCUSSION

¶5 Mr. Gonzalez contends that the court's announcement (1) that he was in jail because he could not post bail, (2) that he was being transported in restraints, and (3) that he was under guard in the courtroom, all influenced his constitutional right to an impartial jury and the presumption of innocence. He notes the obvious fact that only defendants who cannot post bail are in custody and subject to this instruction. This, he contends, violates the right to equal justice.

¶6 The State responds that, because the court did not order Mr. Gonzalez restrained in the courtroom, it was not required to consider the *Hartzog*[1] criteria for such restraints. Also, no juror actually saw Mr. Gonzalez in restraints, and he has failed to demonstrate prejudice from the instruction.

¶7 Every criminal defendant is entitled to a fair trial by an impartial jury. U.S. CONST. amends. VI, XIV § 1; WASH. CONST. art. I, §§ 3, 21, 22. The right to a fair trial includes the right to the presumption of innocence. *Estelle v. Williams*, 425 U.S. 501, 503, 96 S. Ct. 1691, 48 L. Ed. 2d 126 (1976); *State v. Crediford*, 130 Wn.2d 747, 759, 927 P.2d 1129 (1996). This constitutionally guaranteed presumption is the bedrock foundation in every criminal trial. *Morissette v. United States*, 342 U.S. 246, 275, 72 S. Ct. 240, 96 L. Ed. 288 (1952). It is the duty of the court to give effect to the presumption by being alert to any factor that could "undermine the fairness of the fact-finding process." *Williams*, 425 U.S. at 503.

¶8 We must determine whether the instruction complained of here affected Mr. Gonzalez's due process right to a fair trial. *State v. Latham*, 100 Wn.2d 59, 66, 667 P.2d 56 (1983) (citing *Smith v. Phillips*, 455 U.S. 209, 102 S. Ct. 940, 71 L. Ed. 2d 78 (1982) ). We review alleged violations of the right to an impartial jury and the presumption of innocence de novo. *State v. Johnson*, 125 Wn. App. 443, 457, 105 P.3d 85 (2005). Whether a particular practice had a negative effect on the judgment of jurors receives "close judicial scrutiny." *Williams*, 425 U.S. at 504; *Estes v. Texas*, 381 U.S. 532, 85 S. Ct. 1628, 14 L. Ed. 2d 543 (1965); *In re Murchison*, 349 U.S. 133, 75 S. Ct. 623, 99 L. Ed. 942 (1955). We evaluate the likely effects "based on reason,

---

[1] The factors include: The seriousness of the charge; defendant's age, temperament, and physical strength; criminal history; previous escapes or attempts, or evidence of a present plan to escape; threats to harm others or cause a disturbance; self-destructive tendencies; risk to the defendant of mob violence or attempted revenge; size and mood of the audience; the usual level of security in the courtroom; and the adequacy and availability of alternative remedies. *State v. Hartzog*, 96 Wn.2d 383, 400, 635 P.2d 694 (1981).

principle, and common human experience." *Williams*, 425 U.S. at 504.

¶9 The presumption of innocence guarantees every criminal defendant all "the physical indicia of innocence," including that of being "brought before the court with the appearance, dignity, and self-respect of a free and innocent man." *State v. Finch*, 137 Wn.2d 792, 844, 975 P.2d 967 (1999). We have previously held that the appearance of shackles or other restraints " 'may reverse the presumption of innocence by causing jury prejudice,' " and thus denying due process. *State v. Hutchinson*, 135 Wn.2d 863, 887, 959 P.2d 1061 (1998) (quoting *Jones v. Meyer*, 899 F.2d 883, 885 (9th Cir. 1990)).

¶10 For these reasons the courts must be alert to any factor that may "undermine the fairness of the fact-finding process." *Williams*, 425 U.S. at 503. Due process requires the trial judge to be "ever watchful to prevent prejudicial occurrences and to determine the effect of such occurrences when they happen." *Smith*, 455 U.S. at 217.

¶11 The court's duty to shield the jury from routine security measures is a constitutional mandate. *Hutchinson*, 135 Wn.2d at 887-88. It follows that only if an inadvertent or unavoidable breach brings the jailed defendant's condition to the attention of the jury may the court give a curative instruction. A preemptive instruction merely creates the problem it purports to solve.

¶12 Here, the court gave a curative instruction as a matter of course to satisfy the constitution, then left it to the Department of Corrections' discretion whether to actually provide due process. Instead of preventing Mr. Gonzalez's jury from learning that he was indigent, incarcerated, had been transported in restraints, and was being tried under guard, the judge made a special announcement drawing the attention of the jurors to these points. This was manifest constitutional error. As in *Williams*, the jury's awareness not only of transportation protocols, but also of the presence of uniformed guards throughout the trial, was a continuing reminder that the State perceived Mr.

Gonzalez as meriting the trappings—if not the presumption—of guilt.

¶13 *Hartzog Hearing.* Mr. Gonzales contends the court was required to make a record of the reasons why potentially prejudicial security measures could not be kept from the jury.

¶14 The court is vested with the duty and discretion to provide courtroom security. *State v. Hartzog*, 96 Wn.2d 383, 396, 635 P.2d 694 (1981). If the court determines the need for security measures that cannot be concealed from the jury, the judge must make a record of a compelling individualized threat of injury to people in the courtroom, disorderly conduct, or escape. *Id.* at 397-98. The court must make every effort to minimize the impact on the jury of any unavoidable exposure.

¶15 Because the jury would not see the restraints, the State responds that the *Hartzog* factors do not apply. As discussed, however, the key concern is the jury's awareness, by whatever means conveyed. A *Hartzog* hearing here would have made it abundantly clear that no legitimate security purpose was served by the prophylactic instruction here. Moreover, a *Hartzog* hearing may have brought out why a uniformed officer was obviously guarding Mr. Gonzalez in the presence of the jury.[2] The court's exercise of discretion in the matter of courtroom security must have a factual basis in the record. *Hartzog*, 96 Wn.2d at 401; *State v. Turner*, 99 Wn. App. 482, 488, 994 P.2d 284 (2000).

¶16 Absent a *Hartzog* foundation, unless the jury has inadvertently or unavoidably perceived the defendant's condition, there is no problem to cure and the court's discretion does not arise. *See, e.g., State v. Rodriguez*, 146 Wn.2d 260, 271, 45 P.3d 541 (2002). The court may give a simple, curative instruction at the defendant's request. *Id.* If necessary to remedy the inadvertent exposure, the court also has the discretion to grant a mistrial. *Id.*

---

[2] The judge observed: "[Y]ou would have to be blind and off the jury not to know that he's in custody because we have a Department of Corrections officer in uniform obviously guarding him." RP at 90.

¶17 Here, the court did not order Mr. Gonzalez restrained in court, and the jury never saw him, even fleetingly, outside the courtroom. Nevertheless, Mr. Gonzalez was tried before a jury that had been instructed by the trial judge that (1) he was poor, or at least too poor to post bail; (2) he was being held in jail; (3) he was being transported in restraints; and (4) he would remain under uniformed guard throughout the trial. This strikes at the very heart of the presumption of innocence. There was simply no need to caution this jury to cure a problem that did not arise.

¶18 *Equal Justice.* Mr. Gonzalez also asserts that incorporating this instruction into the criminal procedure applied to indigent defendants but not to affluent ones violates the due process right to equal treatment under the law.

¶19 The equal justice violation was not that Mr. Gonzalez was restrained during transport because he was in jail, as posited by the State. Certainly the government has a duty to transport criminal defendants securely. The problem is that only an indigent defendant is subjected to the public humiliation of standing before the court while the judge informs the world at large and his jury in particular of the ignominy of his position.

¶20 Mr. Gonzalez claims the right to as vigorous a presumption of innocence as the defendant who posts bail. He seeks a uniform criminal procedure for the indigent and affluent alike. We agree.

¶21 It is the fundamental tenet of our entire judicial system that every person charged with a crime stands on a basis of " ' "equality before the bar of justice in every American court." ' " *Harris v. Rees*, 794 F.2d 1168, 1176 (6th Cir. 1986) (quoting *Griffin v. Illinois*, 351 U.S. 12, 17, 76 S. Ct. 585, 100 L. Ed. 891 (1956) (quoting *Chambers v. Florida*, 309 U.S. 227, 241, 60 S. Ct. 472, 479, 84 L. Ed. 716 (1940))). This means that indigent defendants are entitled to the same criminal procedure as that received by persons of means. *Griffin*, 351 U.S. at 17.

¶22 Membership in a protected group or suspect class is not a prerequisite. The constitutional guaranties of an impartial jury and the presumption of innocence "are universal in their application, to all persons within the territorial jurisdiction, without regard to any differences of race, of color, or of nationality; and the equal protection of the laws is a pledge of the protection of equal laws." *Yick Wo v. Hopkins*, 118 U.S. 356, 369, 6 S. Ct. 1064, 30 L. Ed. 220 (1886). To create a condition solely for the category of criminal defendants who cannot make bail is "repugnant to the concept of equal justice embodied in the Fourteenth Amendment." *Williams*, 425 U.S. at 505-06 (citing *Griffin*, 351 U.S. 12).

¶23 If Mr. Gonzalez had possessed the means to post bail, he would not have had to endure this instruction. This was a further violation of due process. Unless the procedure for shielding transported defendants from pretrial exposure to the jury has broken down, a prophylactic instruction is equally superfluous however the defendant arrived at court.

¶24 *Harmless Error.* Finally, we must determine whether the instruction was harmless. Informing the jury that the defendant was subject to physical restraints is " 'inherently prejudicial' " because restraints are " 'unmistakable indications of the need to separate a defendant from the community at large.' " *State v. Jaquez*, 105 Wn. App. 699, 709, 20 P.3d 1035 (2001) (emphasis omitted) (quoting *Finch*, 137 Wn.2d at 845).

¶25 In the usual case, a remedial instruction is required to cure an inadvertent juror sighting of a defendant in restraints. We have held that such instructions may be sufficient to cure any prejudice. *See, e.g. Rodriguez*, 146 Wn.2d at 271. But this is not the usual case. And there is no principled, analytical way to evaluate the effect of this needless instruction on the entire jury panel at the beginning of this trial. This was a structural error of the sort that defies analysis by harmless error standards. *Quintero v. Bell*, 256 F.3d 409, 415 (6th Cir. 2001); *see also Arizona v.*

*Fulminante*, 499 U.S. 279, 289, 111 S. Ct. 1246, 113 L. Ed. 2d 302 (1991).

¶26 However strong the government's case, the fundamental right to a fair trial demands minimum standards of due process. *State v. McHenry*, 88 Wn.2d 211, 214, 558 P.2d 188 (1977). When a trial right as fundamental as the presumption of innocence is abridged, however, reversal is required. *Id.*

¶27 We reverse and remand for a new trial without this instruction. If juror views of restrained defendants are inevitable in this county, as this record suggests, then it is the transport procedures which must change, not the constitutional presumption of innocence.

¶28 We reverse the conviction.

KURTZ, J., concurs.

¶29 BROWN, J. (dissenting) — Considering the cramped facilities as conditions posing a risk the jurors might see Martin Gonzalez being transported, and considering the small courtroom as a place where the jurors would notice the security guard's presence, the court preliminarily instructed the prospective jurors to disregard any chance of viewing Mr. Gonzalez being transported and the security guard's presence. It did not err.

¶30 First, I believe the trial court properly exercised its discretion when instructing the prospective jurors to disregard the obvious presence of the uniformed security guard in what is apparently a tiny courtroom. The trial court had little choice but to instruct.

¶31 Second, no evidence shows any juror actually saw Mr. Gonzalez manacled at any time. *See In re Pers. Restraint of Woods*, 154 Wn.2d. 400, 419-20, 114 P.3d 607 (2005) (no prejudice when defendant transported in restraints, but not actually seen in restraints in the courtroom). Our facts are similar to those in *Woods*, but for the precautionary instruction. Concerned about an inadvertent viewing problem, the trial court instructed to cure the

perceived problem. *State v. Rodriguez*, 146 Wn.2d 260, 270, 45 P.3d 541 (2002). The case facts showed Mr. Gonzalez attempted to elude pursuing officers and was captured. Such accounts are routine in the criminal process. It is difficult to see reversible prejudice by simply envisioning Mr. Gonzalez in handcuffs at some point outside the courtroom.

¶32 Third, it is a far road to travel to find an equal protection violation. "The equal protection clause, rationally applied, does not compel the [S]tate to move affirmatively to eliminate any and all differences that the fortunes of life might conceivably entail." *Riggins v. Rhay*, 75 Wn.2d 271, 283-84, 450 P.2d 806 (1969). State officials "have substantial latitude to establish classifications that roughly approximate the nature of the problem perceived, that accommodate competing concerns both public and private, and that account for limitations on the practical ability of the State to remedy every ill." *Plyler v. Doe*, 457 U.S. 202, 216, 102 S. Ct. 2382, 72 L. Ed. 2d 786 (1982). The public interest in safety in transporting inmates from jail to the courtroom is a public concern justifying handcuffs and different treatment. Thus, a legitimate reason exists as a basis for the classification between inmates in custody and those released.

¶33 In sum, the issue is whether the trial court erred by abusing its discretion in denying Mr. Gonzalez's mistrial motion after giving a preliminary precautionary instruction to disregard the Department of Corrections' protocol and uniformed security officer's presence. Given the facts and the law, I would hold the trial court did not abuse its discretion. I would affirm.

¶34 Accordingly, I respectfully dissent.