## IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 46292-3-II |
| Respondent, | |
| v. | |
| NATHAN SQUIRE AUSTIN, | UNPUBLISHED OPINION |
| Appellant. | |

WORSWICK, J. — A jury returned verdicts finding Nathan Squire Austin guilty of second degree taking a motor vehicle without permission, contrary to RCW 9A.56.075, and unlawful possession of a controlled substance, contrary to former RCW 69.50.4013(2003).[1] Austin appeals his convictions and resulting sentence, asserting that (1) his defense counsel was ineffective for failing to object to testimony that a witness knew Austin from when they were both in rehab together, (2) a police officer's testimony that the officer arrested Austin after conducting a "high-risk felony stop" violated Austin's right to a fair trial by an impartial jury, and (3) the sentencing court erred by imposing certain legal financial obligations without first considering whether Austin had the present or likely future ability to pay the obligations. We affirm.

---

[1] The jury also returned a verdict finding Austin not guilty of unlawful possession of a stolen vehicle.

FACTS

On December 5, 2013, Puyallup Tribal Police Officer Moises Lopez was patrolling the parking lot of the Emerald Queen Casino in Tacoma. While patrolling the parking lot, Lopez saw an unoccupied vehicle that had been reported stolen a few days earlier. Lopez was watching the vehicle when he saw Austin and two females enter it. Lopez arrested Austin and advised him of his *Miranda*[2] rights. When Lopez informed Austin that he was conducting a stolen vehicle investigation, Austin told Lopez that the vehicle belonged to his friend, Paul Siskin. Austin explained to Lopez that he was riding as a passenger in Siskin's vehicle a few days prior to December 5 when Siskin asked him to drive the vehicle because Siskin was too drunk to drive. Austin told Lopez that he had driven Siskin to the Emerald Queen Casino and that the two later got separated while in the casino. Austin stated to Lopez that, after he couldn't locate Siskin in the casino, he drove Siskin's vehicle around the area to look for him but could not locate him.

During a search of Austin incident to his arrest, Lopez found a small plastic bag in Austin's coat pocket that contained a substance later tested and confirmed to be methamphetamine. Lopez also found two syringes in Austin's pockets. Austin told Lopez that the substance in the plastic bag was "meth" and that he uses "meth" by injecting it. Report of Proceedings (RP) at 86-87. On March 4, 2014, the State charged Austin with unlawful possession of a stolen vehicle, second degree taking a vehicle without permission, and unlawful possession of a controlled substance.

---

[2] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

At trial Lopez testified that after he saw Austin enter the reported stolen vehicle, he conducted a "high-risk felony stop." RP at 75. The following exchange then occurred:

> [State]: So when you see this [sic] three people, did you radio for [another officer] to come assist you?
> [Lopez]: I did, yes.
> [State]: Why is that?
> [Lopez]: It's just something that we always do whenever we know that there's going to be a high-risk stop on a vehicle. We usually—
> [State]: Sorry. If you would finish.
> [Lopez]: We usually request backup, coverups [sic].
> [State]: Now, you made the decision to perform a high-risk stop. Why is that?
> [Lopez]: It's just something that we do. Like I said, we know that usually stolen vehicles—
> [Defense counsel]: Objection, Your Honor. Not relevant.
> [Trial court]: Overruled.
> [Lopez]: We know from our training and experience that there is usually guns involved in there, and it is a pretty dangerous situation to just do alone.
> [State]: Okay. So when you say a high-risk stop, could you explain that to the jury, what that entails?
> [Lopez]: What that is is we activate our emergency equipment. We usually use our microphone to order the occupants of the vehicle out. In this case, the vehicle was already parked, so what I did was I activated my lights and positioned my vehicle blocking the exit of the vehicle so he wouldn't be able to back out. We ordered the individuals out of the vehicle, and we normally detain them one at a time by placing handcuffs on them, and that's how we do it—one at a time, if there are multiple individuals in the vehicle.
> [State]: Okay. Is that what you did on this occasion?
> [Lopez]: Yes.

RP at 76-77.

Siskin's mother testified that she owned the vehicle at issue, which she had purchased for her son. Siskin testified that he drove to the Emerald Queen Casino on the day before Thanksgiving and, while at the casino, briefly ran into Austin; Siskin denied that he came to the casino with Austin. Siskin further testified that he knew Austin from when they were in "rehab" together, but that he did not "hang out with [Austin] socially." RP at 101. Siskin stated that

3

while he was at the casino that day, he discovered that his car keys were missing. Austin said that he unsuccessfully searched for his car keys for a couple of hours before securing a ride home. Siskin testified that when he returned to the parking lot the following day to retrieve his vehicle, it was no longer there. Siskin denied giving the car keys to Austin and denied giving Austin permission to use the vehicle.

The jury returned verdicts finding Austin not guilty of unlawful possession of a stolen vehicle, guilty of second degree taking a motor vehicle without permission, and guilty of unlawful possession of a controlled substance. At Austin's May 9, 2014 sentencing hearing, the sentencing court stated that it would adopt the recommended legal financial obligations, to which Austin did not object. The sentencing court thereafter imposed legal financial obligations, which obligations included $1,500 for "Court-Appointed Attorney Fees and Defense Costs." Clerk's Papers (CP) at 52. Austin's judgment and sentence states, "The court finds that the defendant has the ability or likely future ability to pay the legal financial obligations imposed herein." CP at 51-52. Austin appeals his convictions and resulting sentence.

ANALYSIS

I. INEFFECTIVE ASSISTANCE OF COUNSEL

Austin first contends that his defense counsel was ineffective for failing to object to Siskin's testimony that he knew Austin from when they were in rehab together. We disagree.

We review ineffective assistance of counsel claims de novo. *State v. Thach*, 126 Wn. App. 297, 319, 106 P.3d 782 (2005). To prevail on his ineffective assistance of counsel claim, Austin must show both that (1) his counsel's performance was deficient and (2) such deficient performance resulted in prejudice. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct.

4

2052, 80 L. Ed. 2d 674 (1984). We strongly presume that counsel is effective. *State v. Reichenbach*, 153 Wn.2d 126, 130, 101 P.3d 80 (2004). To overcome this presumption, Austin bears the burden of "establishing the absence of any '*conceivable* legitimate tactic explaining counsel's performance.'" *State v. Grier*, 171 Wn.2d 17, 42, 246 P.3d 1260 (2011) (quoting *Reichenbach*, 153 Wn.2d at 130), *cert. denied*, 135 S. Ct. 153 (2014).

Here, defense counsel's decision not to object to Siskin's testimony is supported by a legitimate trial tactic and, thus, Austin cannot succeed in his ineffective assistance of counsel claim. Defense counsel could have conceivably wanted the jury to consider Austin and Siskin's previous relationship in rehab together to support Austin's statement to police that Siskin had given him permission to use the vehicle because Siskin was too impaired to drive. The fact that Austin and Siskin had a prior relationship made it more likely that Siskin would give Austin permission to drive his vehicle. And, although the fact that the two men were previously in rehab together could support an inference that Austin had substance abuse issues, it also supported the inference that Siskin had substance abuse issues. The inference that Siskin had substance abuse issues gave further credence to Austin's claim that Siskin was too impaired to drive, and it supported the defense theory that Siskin was too impaired to remember giving Austin permission to use the vehicle. At closing argument, defense counsel relied on both Austin's and Siskin's substance abuse issues to support this theory of the case, stating:

> Now, it's not inconceivable that Paul Siskin and my client were on a bender. They were drunk or high, take your pick, and perhaps Paul Siskin forgot that he gave my client the keys to the car and allowed him to use the vehicle.

RP at 157. Because defense counsel had a legitimate tactical reason for not objecting to Siskin's testimony, Austin cannot meet his burden of demonstrating ineffective assistance of counsel.

## II. RIGHT TO A FAIR TRIAL BY AN IMPARTIAL JURY

Next, Austin contends that Lopez's testimony that he had conducted a "high-risk felony stop" when arresting him violated his right to a fair trial by an impartial jury. Again, we disagree.

The United States Constitution and the Washington State Constitution provide criminal defendants with the right to a fair trial by an impartial jury. *State v. Gonzales*, 129 Wn. App. 895, 900, 120 P.3d 645 (2005) (citing U.S. CONST. amends. VI, XIV; WASH. CONST. art. I, §§ 3, 21, 22). The right to a fair trial by an impartial jury "includes the right to the presumption of innocence." *Gonzales*, 129 Wn. App. at 900 (citing *Estelle v. Williams*, 425 U.S. 501, 503, 96 S. Ct. 1691, 48 L. Ed. 2d 126 (1976)); *State v. Crediford*, 130 Wn.2d 747, 759, 927 P.2d 1129 (1996)). We review alleged violations of the right to a fair trial by an impartial jury de novo. *Gonzales*, 129 Wn. App. at 900.

Austin argues that Lopez's testimony that he had conducted a "high-risk felony stop" when arresting Austin undermined the presumption of innocence by suggesting to the jury that Austin was particularly dangerous. But here, Lopez testified that he conducted a high-risk felony stop due to the nature of Austin's suspected crime and not because of any particular conduct on the part of Austin. And when explaining what a "high-risk felony stop" entailed, Lopez merely described the additional safety precautions officers take when arresting suspects pursuant to a stolen vehicle investigation. Although Lopez stated that officers take these additional safety precautions when arresting stolen vehicle suspects because the crime often involves guns, Lopez did not testify that Austin had possessed a gun or that he thought Austin was particularly dangerous. Because Lopez's testimony about the general safety precautions employed when

6

arresting a suspect in a stolen vehicle investigation did not suggest that Austin was particularly dangerous or that he was guilty of his suspected crimes, it did not undermine Austin's presumption of innocence. Accordingly, Austin fails to show a violation of his constitutional right to a fair trial by an impartial jury.

### III. LEGAL FINANCIAL OBLIGATIONS

Finally, Austin contends that the sentencing court erred by imposing a $1,500 legal financial obligation for court-appointed attorney fees and costs because the sentencing court failed to consider his ability to pay the obligation before imposing it. Austin's judgment and sentence contains a preprinted finding stating that he "has the ability or likely future ability to pay the legal financial obligations imposed herein." CP at 52. Austin did not challenge this finding during sentencing and, thus, he cannot do so as a matter of right for the first time on appeal. *State v. Blazina*, 174 Wn. App. 906, 911, 301 P.3d 492 (2013), *remanded*, 182 Wn.2d 827, 344 P.3d 680 (2015). Our decision in *Blazina*, nearly a year before Austin's May 9, 2014 sentencing hearing, provided notice that the failure to object to legal financial obligations imposed at sentencing waived the issue on appeal. 174 Wn. App. at 911. As our Supreme Court noted in reviewing our decision in *Blazina*, an appellate court may in its discretion decline to reach such unpreserved claims of error. *Blazina*, 182 Wn.2d at 830. Because Austin had sufficient notice of his obligation to object to legal financial obligations imposed at sentencing to preserve the issue for appeal, we exercise our discretion and decline addressing Austin's contention with his legal financial obligations for the first time on appeal. Accordingly, we affirm Austin's convictions and resulting sentence.

7

No. 46292-3-II

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Worswick, J.

We concur:

_____
Johanson, C.J.

_____
Melnick, J.