# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 46912-0-II |
| Respondent, | |
| v. | |
| JAMES SCOTT CLOUD, | UNPUBLISHED OPINION |
| Appellant. | |

WORSWICK, J. — James Scott Cloud appeals his convictions and sentence for two counts of felony harassment. Because the cumulative effect of the trial court's erroneous admission of Cloud's prior conviction and booking photo combined with defense counsel's deficient performance deprived Cloud of his right to a fair trial, we reverse his convictions and remand for a new trial.

## FACTS

During May and June of 2014, Cloud was an inmate at the Pierce County Jail. He was held in Unit 3 South A, a high security unit for inmates who pose the highest security risk due to mental health issues and bad behavior.

Corrections Officer Cody Olson had several interactions with Cloud. According to Officer Olson, Cloud attempted to "stare him down" while the two of them were in the medical clinic. Verbatim Report of Proceedings (VRP) (Oct. 17, 2014) at 86. From that point on, every time Cloud saw Officer Olson, Cloud would taunt him. After Officer Olson reported the issues to his supervisor, Cloud was sanctioned.

One day when Officer Olson dropped off Cloud's meal tray, Cloud called Officer Olson several derogatory names. When Officer Olson returned to pick up the tray, Cloud grabbed Officer Olson's hand and Officer Olson sprayed Cloud with pepper spray to make Cloud release him. According to Officer Olson, Cloud stood at his cell door in a "fighting stance" on June 5, 2014, and repeatedly told Officer Olson, "I'm going to f*** you up. Make sure you put it in your report that I promise to f*** you up." VRP (Oct.7, 2014) at 91. Officer Olson believed the statements were a threat, and he feared for his and his family's safety because Cloud was scheduled to be released from jail soon.

Cloud denied attempting to stare Officer Olson down, ever touching or calling Officer Olson names, or ever making threatening statements to Officer Olson, and further said that Officer Olson pepper sprayed him "[f]or no reason." VRP (Oct. 8, 2014) at 85.

In May and June of 2014, Azusa Matsubayashi was working as a mental health professional in the jail. After noticing his record of behavior problems, Matsubayashi evaluated Cloud for possible mental health issues.[1] Following Matsubayashi's evaluation of Cloud, Cloud began making derogatory comments to her whenever she was in Unit 3 South A. According to Matsubayashi, on June 30, 2014, she was near Cloud's cell when she heard Cloud say something along the lines of "[I'm] going to kill [you]." VRP (Oct. 7, 2014) at 122. Matsubayashi paused and listened to see if he said anything else. She then heard Cloud say he was going to kill her and to go ahead and tell the sergeant and lieutenant, and "this is not a threat, it's a promise."

---

[1] Before meeting with Cloud, Matsubayashi checked his booking photo to confirm she was meeting with the correct inmate. The booking photo was admitted as an exhibit during trial, over defense counsel's objection. The photo is not contained within the record on appeal.

VRP (Oct. 7, 2014) at 123. Matsubayashi reported the incident to the lieutenant. Cloud denied making any derogatory or threatening comments toward Matsubayashi.

Following the June 5 and June 30 incidents involving Officer Olson and Matsubayashi, Cloud was charged with two counts of felony harassment.

During pretrial motions, the State announced its intention to introduce ER 609 convictions if Cloud chose to testify. Specifically, the State sought to admit a residential burglary and second degree assault conviction from 2010. Defense counsel objected, arguing that the convictions were more prejudicial than probative. The trial court ruled that the burglary conviction would be admissible pursuant to ER 609(2) if the State could prove that it was charged as an unlawful entry with the intent to commit theft, but correctly noted that if the underlying intent was to commit assault then the court would need to address it under different criteria.

The State also intended to offer evidence of other instances of Cloud's misconduct in the jail. Defense counsel opposed the evidence, arguing it was "nonprobative" and unfairly prejudicial. The trial court held that evidence of instances involving Officer Olson or Matsubayashi was probative of the reasonableness of the victims' apprehension and fear and was therefore admissible for that purpose.

At trial, Officer Olson testified about Unit 3 South A in detail. He stated that 3 South A is "where we keep our worst offenders." VRP (Oct. 7, 2014) at 78. He went on to explain that the offenders housed in Unit 3 South A were "Level 1s," which means "people that are classified as the highest security alert, security risk, rather." VRP (Oct. 7, 2014) at 78. When asked what type of risks are considered when classifying an inmate as a Level 1, Officer Olson responded

that the main reason is because an inmate is assaultive. The State questioned Officer Olson about things inmates in Unit 3 South A had done to disrupt the unit. Officer Olson described incidents when inmates used urine or feces as weapons, and confirmed that "Level 1" inmates wear belly chains or ankle chains.

Cloud also testified. While cross-examining Cloud, the State questioned him about incidents listed on his behavior logs kept by the jail. The State started from the most recent incidents and worked backward, noting 12 separate incidents—some involving Officer Olson and Matsubayashi, and others not. Cloud acknowledged that he had been sanctioned for those incidents, but denied committing the underlying infractions.

Over Cloud's objection, the trial court permitted the State to continue its inquiry as it related to Officer Olson and Matsubayashi, and informed the parties it would consider a limiting instruction.

Later, the State asked Cloud, "Now, we're obviously aware you were in the Pierce County Jail at the time this contact occurred, accurate to say you've been convicted of residential burglary, for example?" VRP (Oct. 8, 2014) at 95. Cloud responded, "Correct." VRP (Oct. 8, 2014) at 95. Defense counsel objected on the grounds that the State had not established the particular grounds for the admission of the burglary conviction. The State acknowledged that it had forgotten about the trial court's residential burglary ruling, and conceded that because the burglary was based upon assault as opposed to theft it was not admissible as a crime of dishonesty pursuant to ER 609(2). The State argued the prior conviction could be admitted for impeachment pursuant to ER 609(1), and the trial court agreed and denied defense counsel's motion for a mistrial.

4

No. 46912-0-II

After the close of evidence, the trial court issued a limiting instruction to the jury regarding Cloud's prior misconduct:

> During the course of this trial evidence was presented concerning misconduct of the defendant directed towards employees of the Pierce County correctional facility other than Officer Cody Olson and Ms. A[z]usa Matsubayashi. The jury is instructed that they cannot consider this evidence in deciding the crime alleged in Count IA [C. Olson] and the crime alleged in Count IIA[ A[z]usa Matsubayasi].

Clerk's Papers (CP) at 122 (some alterations in original).

Cloud did not object to the limiting instruction. Both the State and Cloud focused their closing arguments on the credibility of the various witnesses.

On October 10, 2014, the jury found Cloud guilty of both counts of felony harassment. Cloud appeals his convictions.

ANALYSIS

A defendant has a fundamental right to a fair trial. U.S. CONST. amends. VI, XIV, § 1; WASH. CONST. art. I, § 22. "[T]he fundamental right to a fair trial demands minimum standards of due process." *State v. Gonzalez*, 129 Wn. App. 895, 905, 120 P.3d 645 (2005). The United States Supreme Court has held that "[c]entral to the right to a fair trial, guaranteed by the Sixth and Fourteenth Amendments, is the principle that 'one accused of a crime is entitled to have his guilt or innocence determined solely on the basis of the evidence introduced at trial, and not on grounds of official suspicion, indictment, continued custody, or other circumstances not adduced as proof at trial.'" *Holbrook v. Flynn*, 475 U.S. 560, 567, 106 S. Ct. 1340, 89 L. Ed. 2d 525 (1986) (quoting *Taylor v. Kentucky*, 436 U.S. 478, 485, 98 S. Ct. 1930, 56 L. Ed. 2d 468 (1978)). To safeguard the fundamental right to a fair trial, a criminal defendant is entitled to the effective assistance of counsel. See *Strickland v. Washington*, 466 U.S. 668, 686, 104 S. Ct. 2052, 80 L.

5

No. 46912-0-II

Ed. 2d 674 (1984). We may reverse a defendant's convictions when the combined effect of errors during trial effectively denied the defendant his right to a fair trial, even if each error standing alone would be harmless. *State v. Venegas*, 155 Wn. App. 507, 520, 228 P.3d 813 (2010).

## I. PRIOR CONVICTION AND BOOKING PHOTO

A. *Prior Conviction*

Cloud argues that the trial court erred by admitting his prior burglary conviction pursuant to ER 609 because it was not a crime of dishonesty or false statement and was not probative of his truthfulness.[2] We agree.

ER 609 governs the admission of a prior conviction for impeachment purposes. Under ER 609(a)(1), a conviction is admissible if the crime was punishable by death or imprisonment in excess of one year and the court determines that the probative value of admitting this evidence outweighs the prejudice to the party against whom the evidence is offered.[3] Because the sole purpose of impeachment evidence under ER 609(a)(1) is to enlighten the jury with respect to the defendant's credibility as a witness, prior convictions are probative under ER 609(a)(1) only to the extent they are probative of the witness's truthfulness. *State v. Hardy*, 133 Wn.2d 701, 707-08, 946 P.2d 1175 (1997). Few prior offenses that do not involve crimes of dishonesty or false

---

[2] Cloud also argues the trial court erred by ruling that evidence of Cloud's prior assault conviction was admissible. But the State did not introduce, nor did the trial court admit, any evidence of a prior assault conviction.

[3] A conviction is admissible per se under ER 609(a)(2) if it is for a crime of dishonesty. The conviction at issue is burglary with intent to commit assault, which is not a crime of dishonesty. Therefore, ER 609(a)(2) is not implicated.

statement are likely to be probative of a witness's veracity. *State v. Jones*, 101 Wn.2d 113, 120, 677 P.2d 131 (1984).

We review rulings made under ER 609 for an abuse of discretion. *State v. Rivers*, 129 Wn.2d 697, 704-05, 921 P.2d 495 (1996). In admitting a prior conviction under ER 609(a)(1), the trial court must consider on the record the factors set forth in *State v. Alexis*, 95 Wn.2d 15, 19, 621 P.2d 1269 (1980): (1) the length of the defendant's criminal record, (2) the remoteness of the prior conviction, (3) the nature of the prior crime, (4) the age and circumstances of the defendant, (5) the centrality of the credibility issue, and (6) the impeachment value of the prior crime. The trial court must state the factors considered under the *Alexis* test on the record. *Jones*, 101 Wn.2d at 122. Failure to engage in this process on the record is an abuse of discretion. *Jones*, 101 Wn.2d at 122-23.

Here, the trial court, over Cloud's objection, ruled that Cloud's prior burglary conviction was probative of his credibility and not unfairly prejudicial. However, the trial court did not engage in a proper analysis of the six *Alexis* factors, specifically failing to address the conviction's probative value. Instead, the trial court focused only on whether the conviction was unfairly prejudicial. Although the trial court stated at the conclusion of its colloquy on the matter, "I think that this is probative of his credibility," such a statement without any meaningful analysis of the particular conviction's effect on a witness's credibility is insufficient to establish the probative value of the conviction. VRP (Oct. 7, 2014) at 107. *See Jones*, 101 Wn.2d at 122-23.

The prior burglary was performed with the intent to commit assault, not theft. The State did not show any additional facts to explain how this conviction was probative of Cloud's

credibility. Therefore, the trial court abused its discretion by admitting evidence of Cloud's prior conviction.

B.     *Booking Photo*

Cloud also argues that the trial court erred by admitting Cloud's booking photo. We agree.

Booking photos can raise a prejudicial inference of criminal propensity. *State v. Sanford*, 128 Wn. App. 280, 286, 115 P.3d 368 (2005). "Evidence of prior misconduct is admissible to prove identity only if identity is actually at issue." *Sanford*, 128 Wn. App. at 286.

The State contends that the booking photo was relevant because it was used to connect Cloud's identity to the voice that threatened Matsubayashi.[4] However, the booking photo was irrelevant to Matsubayashi's identification of Cloud's *voice*. Neither party disputed that Matsubayashi had met with Cloud before. It was established that she had a previous face-to-face conversation with Cloud; she identified him in open court and Cloud testified that they had spoken face-to-face.

Cloud's booking photo had no tendency to prove Matsubayashi's identification of Cloud's voice. The photo was irrelevant to the case and therefore should have been excluded.

---

[4] Matsubayashi testified that she recognized the voice making the threat as the same voice of Cloud who she had met with before. Before that prior meeting, Matsubayashi looked up Cloud's booking photo to ensure that she met with the correct individual.

8

II. INEFFECTIVE ASSISTANCE OF COUNSEL

A.    *Prior Misconduct*

Cloud argues that his right to a fair trial was infringed because counsel's ineffective

assistance allowed the jury to consider propensity evidence without proper instruction. We

agree.

After the close of evidence, the trial court issued a limiting instruction to the jury. The

limiting instruction read:

> During the course of this trial evidence was presented concerning misconduct of
> the defendant directed towards employees of the Pierce County correctional facility
> other than Officer Cody Olson and Ms. A[z]usa Matsubayashi. The jury is
> instructed that they cannot consider this evidence in deciding the crime alleged in
> Count IA [C. Olson] and the crime alleged in Count IIA[ A[z]usa Matsubayashi].

CP at 122 (some alterations in original).

Cloud argues that his counsel rendered ineffective assistance by failing to object to the

limiting instruction because the instruction gave no direction as to what purpose the jury could

use the evidence of Cloud's prior bad acts involving Officer Olson and Matsubayashi.

To show ineffective assistance of counsel, a defendant must show (1) that defense

counsel's conduct was deficient, and (2) that the deficient performance resulted in prejudice.

*State v. Reichenbach*, 153 Wn.2d 126, 130, 101 P.3d 80 (2004); *see also Strickland*, 466 U.S. at

687. Because ineffective assistance of counsel claims present mixed questions of law and fact,

we review them de novo. *State v. Sutherby*, 165 Wn.2d 870, 883, 204 P.3d 916 (2009).

During motions in limine, the trial court expressly allowed evidence of Cloud's prior

misconduct involving Officer Olson and Matsubayashi to prove the reasonableness of Officer

Olson's and Matsubayashi's apprehension and imminent fear. However, the jury was never

instructed on this limited purpose. When a trial court admits evidence that is subject to ER 404(b), the party against whom such evidence is admitted is entitled to a limiting instruction "informing the jury that the evidence is to be used only for the proper purpose and not for the purpose of proving the character of a person in order to show that the person acted in conformity with that character."[5] *State v. Gresham*, 173 Wn.2d 405, 420, 269 P.3d 207 (2012).

Had Cloud's counsel objected to the instruction or requested an additional instruction, the trial court likely would have issued a limiting instruction consistent with its ruling during motions in limine. Instead, the jury was permitted to rely on highly prejudicial propensity evidence in reaching its verdict because it was not properly instructed. There was no legitimate strategic reason for counsel not to object, given that the instruction permitted the jury to rely on the abundance of highly prejudicial propensity evidence.

B. *"Worst Offenders"*

Cloud further argues his trial counsel rendered ineffective assistance by failing to object to testimony that Cloud was housed in the unit reserved for the "worst offenders" because the evidence was irrelevant and any probative value was substantially outweighed by the risk of unfair prejudice. Br. of Appellant 35. We agree.

---

[5] Generally, ER 404(b) operates as a "categorical bar to admission of evidence for the purpose of proving a person's character and showing that the person acted in conformity with that character." *State v. Gresham*, 173 Wn.2d 405, 420, 269 P.3d 207 (2012). ER 404(b) provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

No. 46912-0-II

To succeed on his claim of ineffective assistance of counsel, Cloud must first show that had counsel objected to the testimony based on ER 402 and ER 403, the objection would have been sustained. *State v. Johnston*, 143 Wn. App. 1, 19, 177 P.3d 1127 (2007).

Generally, all relevant evidence is admissible. ER 402. And evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable." ER 401. Even if the evidence is relevant, a trial court may still exclude it if the danger of undue prejudice substantially outweighs its probative value. ER 403; *State v. Kennealy*, 151 Wn. App. 861, 890, 214 P.3d 200 (2009).

Even assuming the detailed testimony about Unit 3 South A was relevant, the probative value of the evidence was substantially outweighed by the risk of unfair prejudice.[6] Testimony that inmates were held in Unit 3 South A because of their assaultive tendencies and problematic behavior, and that Cloud was housed in Unit 3 South A signaled to the jury that Cloud was one of the "worst offenders" who had significant behavior problems. As such, it was improper propensity evidence.

There was no legitimate trial tactic to justify counsel's failure to object to this testimony. Given the charges Cloud was facing and the fact that this case turned on Cloud's credibility, trial counsel was ineffective for not objecting to prejudicial testimony about the behavior of inmates in Unit 3 South A where Cloud was housed.

_____

[6] We recognize that this evidence may have been admissible for the limited purpose of the reasonableness of the victims' apprehension and fear. However, it was not offered for this purpose, and Cloud's trial counsel requested no limiting instruction.

11

No. 46912-0-II

### III. CONCLUSION

We conclude that the accumulation of prejudice from the errors discussed above is of sufficient magnitude that reversal is necessary.[7] This is not a case where a "new trial will inevitably arrive at the same result," as in *State v. Tharp*, 96 Wn.2d 591, 600, 637 P.2d 961 (1981) (erroneous admission of prior conviction is harmless in view of overwhelming direct evidence of defendant's guilt). As both parties acknowledge, this case turned entirely on witness credibility. Each of the errors at trial undermined Cloud's credibility and painted the picture that Cloud was a problem inmate with a propensity for assaultive behavior. Under these circumstances, the trial court's erroneous admission of character evidence and defense counsel's deficient performance was severe enough to warrant reversal of Cloud's convictions. We remand to the trial court for a new trial.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Worswick, J.

We concur:

_____
Bjorgen, C.J.

_____
Maxa, J.

---

[7] Cloud made numerous other arguments on appeal related to prosecutorial misconduct and ineffective assistance of counsel. Because we find that reversal is warranted based on the errors discussed in this opinion, we do not address these additional errors.