IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No.  35215-3-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| GIOVANNI S. KINSEY, | ) | |
| | ) | |
| Appellant. | ) | |

LAWRENCE-BERREY, C.J. — Giovanni S. Kinsey appeals his conviction for

violation of a no-contact order.  He argues the trial judge violated his constitutional right

to a fair trial when, in the jury's presence, he said he wanted the trial over with.  Kinsey

also argues he received ineffective assistance of counsel when counsel purportedly

admitted Kinsey was guilty.  We disagree and affirm.

FACTS

In August 2016, a no-contact order was in place prohibiting Kinsey from having

contact with his former girlfriend, Shannon Duran.  In the early morning hours of

August 20, 2016, Duran drove to a gas station in a red Ford that did not belong to her.

Kinsey was present at the gas station that night.  He was familiar with the red Ford and

knew who it belonged to. The dark-tinted windows made it improbable that he could see the driver.

Kinsey walked up to the red Ford, and when Duran began to back out of the parking space, Kinsey grabbed the rear spoiler and would not let go.

Two law enforcement officers, Joshua Riley and Keith Schwartz, were parked across the street. They heard Duran scream, and both saw Kinsey run to the passenger door and jump inside. The officers immediately activated their emergency equipment and drove toward the red Ford. Kinsey immediately jumped out of the car and took off running. Duran drove away. The officers subdued Kinsey.

Officer James Scott received a report of the red Ford over his radio. He saw a car that matched the red Ford's description and stopped it. Officers quickly learned of the no-contact order against Kinsey.

By way of amended information, the State charged Kinsey with gross misdemeanor violation of a no-contact order with a domestic violence allegation. Kinsey stipulated to the existence of the no-contact order and that he knew about the order. Two mistrials occurred before the case proceeded to a third and final trial.

At the third trial, the State called Duran as a witness. During her testimony, the following exchange occurred:

2

> [THE STATE:]  [Ms. Duran], is it fair to say you don't want to be here today?
>
> [DURAN:]  Why would I?  I have been here how many weeks now? I mean how many trials?
>
> [DEFENSE COUNSEL]:  Objection, your Honor.
>
> THE COURT:  No, I don't want to be here.  I'd rather be at home . . . playing with my grand kids than being here dragging on and on and on.  I want this over with.

1 Report of Proceedings (RP) (Nov. 16, 2016, Dec. 5, 2016, Dec. 7, 2016, Jan. 30, 2017, Mar. 13, 2017, Mar. 16, 2017, Mar. 17, 2017) at 96.  No party objected to the court's comment.

Minutes later, Kinsey brought a motion for mistrial.  The motion was based on Duran's testimony there had been three trials, police had drawn weapons on Kinsey, and Kinsey had been in prison at some point.  Kinsey did not raise the trial court's recent comment as a basis for his motion.  The trial court denied the motion for mistrial.

After the parties presented their evidence, they gave closing arguments.  Defense counsel argued that Kinsey was not guilty of the charged crime because he did not *knowingly* violate the no-contact order:

> So the car's really important.  And the car's important as well because of the tinted windows.  Now the windows are tinted such that, as [Duran] described, a person on the outside of the vehicle would not be able to identify someone looking inside.  It's dark tinted.  I think she actually indicated it was essentially the color black.  It's very difficult to look from the outside in and see what's going on in the car.

3

I think that the car's especially important, because it shows as evidence of the initial mistake that [Kinsey] made. And before we move on, I think that's worthy to talk about, because the law does, does talk about this idea of a knowing violation. And "knowing" is an important word in the Jury Instructions. It's an important word in the law. And it was there intentionally. There's reason why it's in there, and that's because it is not a crime to have an unknowing violation. . . .

. . . .

And it's important that we recognize that when [Kinsey] did get inside the vehicle, he exited immediately. And [Duran] wasn't clear about her recollection of what happened. But the officers were pretty clear that [Kinsey] got into the vehicle. And at that point what do you do? I mean if you remain in the vehicle longer, that's clearly a violation. In fact, that's further stronger evidence of a violation. So at that point [Kinsey] basically has a choice. He can remain in the car and further violate the order or get out, and that's what the officer said that he did immediately, as quickly as he could to attempt to disarm the situation and further avoid any violation, he did just that. He left. He exited the car, and he actually eventually left . . . .

2 RP (Mar. 16-17, 2017) at 231-32.

The jury found Kinsey guilty of the charged crime. He appeals.

ANALYSIS

A.     UNFAIR TRIAL CLAIM: APPEARANCE OF FAIRNESS

Kinsey first claims that the trial judge's comment that he would rather be playing

with his grandchildren and wanted the trial over with violated the appearance of fairness

doctrine. Kinsey did not raise this argument below.

4

No. 35215-3-III
*State v. Kinsey*

*Claim of error reviewable*

In general, appellate courts will not review a claim of error on appeal that was not preserved below. RAP 2.5(a). We will review an unpreserved claim of error if it involves a manifest error affecting a constitutional right. RAP 2.5(a)(3).

We first consider whether the unpreserved claim of error involves a constitutional right. Criminal defendants have a due process right to a fair trial by an impartial judge. WASH. CONST. art. I, § 22; U.S. CONST. amends. VI, XIV § 1; *In the Matter of Murchison*, 349 U.S. 133, 136, 75 S. Ct. 623, 99 L. Ed. 942 (1955). "Impartial" means the absence of actual or apparent bias. *In re Pers. Restraint of Swenson*, 158 Wn. App. 812, 818, 244 P.3d 959 (2010). We conclude that the unpreserved claim of error involves a constitutional right.

We next consider whether the unpreserved claim of error was manifest. "To be manifest, an error must result in actual prejudice, that is, the asserted error must have had practical and identifiable consequences in the trial of the case." *State v. Davis*, 175 Wn.2d 287, 344, 290 P.3d 43 (2012).

> "[T]o determine whether an error is practical and identifiable, the appellate court must place itself in the shoes of the trial court to ascertain whether, given what the trial court knew at that time, the court could have corrected the error." If the trial court could not have foreseen the potential error or the record on appeal does not contain sufficient facts to review the claim, the alleged error is not manifest.

5

*Id.* (citation omitted) (quoting *State v. O'Hara*, 167 Wn.2d 91, 100, 217 P.3d 756 (2009)).

A trial judge surely knows not to make comments before a jury that could be perceived as minimizing the importance of the trial. The trial judge could have, and should have, corrected the claimed error by retracting its statement soon after it was made. We conclude that the unpreserved claim of error was manifest. We thus consider the merits of Kinsey's argument.

*The trial judge's comment does not evidence any bias*

"Under the appearance of fairness doctrine, a judicial proceeding is valid only if a reasonably prudent, disinterested observer would conclude that the parties received a fair, impartial, and neutral hearing." *State v. Gamble*, 168 Wn.2d 161, 187, 225 P.3d 973 (2010) (citing *State v. Bilal*, 77 Wn. App. 720, 722, 893 P.2d 674 (1995)). "Evidence of a judge's actual or potential bias must be shown before an appearance of fairness claim will succeed." *State v. Chamberlin*, 161 Wn.2d 30, 37, 162 P.3d 389 (2007). In analyzing prejudice, the court does not look at the comment in isolation, but in the context of the case as a whole. *State v. Yates*, 161 Wn.2d 714, 774, 168 P.3d 359 (2007) (quoting *State v. McKenzie*, 157 Wn.2d 44, 52, 134 P.3d 221 (2006)).

We first observe that the trial judge's comment about wanting the trial over with was not about the present trial taking too long. We know this because the testimonial

portion of the trial had just begun; Duran was the State's first witness. The trial judge's

comment instead was an imprudent expression of frustration that the matter was being

tried a third time. The judge's comment did not express any opinion about which party

had the stronger case, or about the credibility of a witness, or about the weight of any

evidence. Because the trial judge's comment did not express bias for or against a party or

a party's witness, Kinsey has failed to establish that the trial judge had any bias in the

case. We therefore reject Kinsey's first claim that he did not receive a fair trial.

> B.    UNFAIR TRIAL CLAIM: PRESUMPTION OF INNOCENCE

Kinsey next argues that he did not receive a fair trial because the trial judge's

comment improperly denied him the presumption of innocence.[1]

The constitutional right to a fair trial includes the right to the presumption of

innocence. *State v. Gonzalez*, 129 Wn. App. 895, 900, 120 P.3d 645 (2005). The trial

court has the duty to protect the presumption of innocence and ensure the fairness of the

proceeding. *Id.* In *Gonzalez*, the trial court undermined the presumption of innocence by

telling the jury that: (1) the defendant was in jail because he could not post bail, (2) the

---

[1] In an isolated sentence, Kinsey asserts that the trial court abused its discretion in denying his sidebar motion for a mistrial. We do not review this assertion because Kinsey has neither assigned error to the trial court's ruling nor has he provided any argument or authority to support it. *Vasquez v. Hawthorne*, 145 Wn.2d 103, 111, 33 P.3d 735 (2001); *Smith v. King*, 106 Wn.2d 443, 451-52, 722 P.2d 796 (1986).

Department of Corrections was transporting him back and forth between jail and court, and (3) standard operating procedures required the defendant to be handcuffed while he was transported between jail and court. *Id.* at 898. We held that a criminal defendant's right to the presumption of innocence is violated when a court informs the jury that the defendant has not posted bail, is in custody, and is being transported between jail and court in handcuffs and under guard. *Id.* at 903.

Here, the trial judge's imprudent comment about wanting the trial over with does not remotely compare to the comments made by the trial judge in *Gonzalez*. As we recognized above, the trial judge's comment was an improper expression of frustration that the matter was being tried a third time. The comment did not express any opinion about Kinsey's guilt and, for this reason, could not have deprived Kinsey of his presumption of innocence. We therefore reject Kinsey's second claim that he did not receive a fair trial.

C.     NO IMPROPER JUDICIAL COMMENT ON THE EVIDENCE

Kinsey next argues that the trial court's comment amounted to an improper judicial comment on the evidence in violation of the Washington Constitution.

Article IV, section 16 of the Washington Constitution prohibits a judge from "conveying to the jury his or her personal attitudes toward the merits of the case" or

instructing a jury that "matters of fact have been established as a matter of law." *State v. Becker*, 132 Wn.2d 54, 64, 935 P.2d 1321 (1997). An improper comment may be express or implied. *State v. Jacobsen*, 78 Wn.2d 491, 495, 477 P.2d 1 (1970). A violation occurs if it appears the court's attitude toward the merits of the case are reasonably inferable from the nature or manner of the court's statements. *State v. Elmore*, 139 Wn.2d 250, 276, 985 P.2d 289 (1999) (quoting *State v. Carothers*, 84 Wn.2d 256, 267, 525 P.2d 731 (1974)).

Kinsey relies on *State v. Bogner*, 62 Wn.2d 247, 382 P.2d 254 (1963). There, defense counsel objected to a witness's testimony that a robbery had occurred. *Id*. at 249. The trial court asked if the defense was denying a robbery had occurred. *Id*. Defense counsel responded that the State had not yet established a robbery. *Id*. The trial court replied that the trial was about who had committed the robbery and remarked that the trial was becoming a little ridiculous at that point. *Id*. Our high court reversed. *Id*. at 256. In reversing, *Bogner* held that the trial court improperly commented on the evidence because its comment reasonably implied to the jury that the State had already proved a robbery had occurred. *Id*. at 255-56.

Kinsey asserts that the trial judge's comment in this case was even more egregious. We disagree. As explained above, the trial judge's comment that it wanted the trial over

with was an imprudent expression of frustration that the case was being tried a third time. The comment did not express or imply the trial judge's personal attitude about the merits of the case.

    D.      EFFECTIVE ASSISTANCE OF COUNSEL

Kinsey argues that he received ineffective assistance of counsel because his trial counsel, in closing, admitted he entered Duran's car. Kinsey asserts that defense counsel should have disputed he entered Duran's car. Kinsey further asserts that by admitting he entered Duran's car, counsel conceded his guilt, and therefore provided ineffective assistance. We disagree.

To meaningfully protect an accused's right to counsel, an accused is entitled to effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). Courts apply a two-pronged test to determine if counsel provided effective assistance: (1) whether counsel performed deficiently, and (2) whether the deficient performance prejudiced the defendant. *Id.* at 687. If a defendant fails to establish one prong of the test, this court need not address the remaining prong. *State v. Hendrickson*, 129 Wn.2d 61, 78, 917 P.2d 563 (1996). This is a mixed question of law and fact, reviewed de novo. *Strickland*, 466 U.S. at 698.

10

To satisfy the first prong, the defendant must show that, after considering all the circumstances, counsel's performance fell below an objective standard of reasonableness. *State v. McFarland*, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995). The burden is on the defendant to show deficient performance. *State v. Grier*, 171 Wn.2d 17, 33, 246 P.3d 1260 (2011). This court gives great deference to trial counsel's performance and begins the analysis with a strong presumption counsel performed effectively. *State v. West*, 185 Wn. App. 625, 638, 344 P.3d 1233 (2015). Counsel's reasonable trial tactics do not constitute deficient performance. *Grier*, 171 Wn.2d at 33.

Here, two officers testified that Kinsey got into the red Ford. Duran testified that she could not recall if Kinsey got into the car. Instead of challenging the officers' testimonies, defense counsel relied on the following uncontested evidence. First, Kinsey believed that the red Ford belonged to someone other than Duran. Second, Kinsey could not see the driver because the red Ford's windows were heavily tinted. Third, Kinsey quickly got out of the red Ford after he entered it. Defense counsel used these uncontested facts to argue that Kinsey was innocent because he did not *knowingly* violate the no-contact order. Counsel argued that once Kinsey knew that Duran was the driver, Kinsey's act of immediately getting out of the car was inconsistent with a knowing violation of the order. Defense counsel stressed that Kinsey could not be convicted

11

No. 35215-3-III
*State v. Kinsey*

unless the State proved that Kinsey's violation was a "knowing violation." Counsel's decision to not challenge the officers' testimony but to pursue a theory based on uncontested evidence was not deficient performance. Rather, it was a reasonable trial tactic.

Affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

Lawrence-Berrey, C.J.

WE CONCUR:

Fearing, J.

Pennell, J.

12